Walter D. Clapp
Honor Coin Law, PLLC
5 Pepsi Dr., Suite 107
P.O. Box 2043
Red Lodge, MT 59068
Telephone: (406) 272-3738
wdclapp@honorcoinlaw.com
*For Plaintiff Sierra Aeronautics Ltd.*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

SIERRA AERONAUTICS LTD., a domestic
Limited Liability Company,

      Plaintiff,

v.

FORD MOTOR COMPANY; KENNEDY
FORD, INC.; JESS FORD OF GRAND
COULEE, LLC; GREENWOOD FORD,
INC.; and HUNT FORD, INC.

      Defendants.

Cause No. _____

Honorable _____

**COMPLAINT AND JURY TRIAL
DEMAND**

    Plaintiff, Sierra Aeronautics LTD. ("Sierra"), by and through their undersigned counsel, Walter D. Clapp, complain against the Defendant as follows:

### I.    THE DISPUTE AND PARTIES

1. Sierra bought a 2022 Ford F250 Super Duty Truck with VIN 1FT8W2BT8NED03526 ("the Vehicle" or "F250"). The Vehicle is defective. At all times, the vehicle has been licensed and registered in Montana.

2. Sierra is a Domestic Limited Liability Company incorporated under the laws of Montana, with its principal place of business in Montana in Missoula.

3. Sierra is an aeronautics company that transports, inspects, maintains and operates helicopters and airplanes across all the United States. To this end, they currently own and operate Five Ford vehicles to assist in the transportation of aircraft, aeronautical equipment and crew.

4. Ford Motor Company ("Ford") is a Foreign Profit Corporation that manufactured the Vehicle in question and is incorporated under the laws of Michigan and/or Delaware, with its principal place of business in Michigan.

5. Ford is registered to do business in Montana with the Montana Secretary of State and Ford's registered agent, the CT Corporation System, is located in Missoula, MT.

6. Kennedy Ford, Inc. ("Kennedy") is a Foreign Profit Corporation incorporated under the laws of Wisconsin, with its principal place of business in Sheboygan Falls, WI, is a licensed dealer and agent of Ford, and sold the Vehicle in question to Sierra.

7. Hunt Ford, Inc. ("Hunt") is a Foreign Profit Corporation incorporated under the laws of Kentucky, l with its principal place of business in Franklin, KY, is a licensed dealer and agent of Ford, and repaired the Ford F250 in question.

8. Jess Ford of Grand Coulee, LLC ("Jess") is a Foreign Limited Liability Company incorporated under the laws of Washington, with its principal place of business in Grand Coulee, Washington, is a licensed dealer and agent of Ford, and has repaired the Ford F250 in question.

9. Greenwood Ford, Inc. ("Greenwood") is a Foreign Profit Corporation incorporated under the laws of Kentucky, with its principal place of business in Bowling Green, KY, is a licensed dealer and agent of Ford, and repaired the Ford F250 in question.

## II.        JURISDICTION/VENUE

10. Sierra incorporates the foregoing.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(a) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

12. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) or (3), USDC MT L.R. 3.2, § 25-2-115, MCA, § 25-2-117, MCA, and § 25-2-122(2)(c), MCA.

## III.        FACTS COMMON TO ALL COUNTS

1. Sierra incorporates the foregoing.

2. The transaction occurred during Covid, around the November 2021 "Omicron Surge."

3. Sierra was looking for an F350, but due to supply chain shortages, there were none to be found.

4. Working through a dealer in Atlanta, Sierra was provided a list of all F250s for sale in the US.

5. The list contained approximately (11) eleven F250s – these were all of the Ford Super-Duty Trucks available in America at that time.

SIERRA AERONAUTICS - COMPLAINT

6. The truck that had the smallest dealer markup was located at the Kennedy dealership.

7. That truck was a 2022 Ford F250 Super Duty Truck with VIN 1FT8W2BT8NED03526 ("the Vehicle" or "F250").

8. Sierra called Kennedy Ford on November 11, 2021. Mike Kennedy, Kennedy's owner, answered the phone. Kennedy stated Sierra was not the first caller on this truck. Kennedy said he would call Sierra back if the prior buyer backed out. Kennedy called Sierra back, and said the prior buyer backed out. Mutual promises, and implied representations and warranties, were made between Sierra and Kennedy while on the phone. Sierra paid a $2,000 deposit with a credit card over the phone on November 12, 2021.

9. Kennedy sent an unsigned and unexecuted "Motor Vehicle Purchase Contract" to Sierra's bank, First National Bank of Grayson, Morehead office, 200 Viking Drive, Morehead, KY 40351. The "Motor Vehicle Purchase Contract", authored by Kennedy, lists Sierra's address in Montana.

10. Kennedy did not send this "Motor Vehicle Purchase Contract" to Sierra. Sierra's bank did not provide the unexecuted "Motor Vehicle Purchase Contract" to Sierra until 2024 during the drafting of this complaint.

11. Sierra's bank wired the purchase price agreed to less the deposit, $78,685, on November 18, 2021.

12. The next day, Sierra's authorized agent, James Samuell, in reliance of the executed agreement made under the Uniform Commercial Code, made with implied warranties by Kennedy and Ford, flew to Wisconsin to pick up the promised Vehicle for which Sierra had already paid. Samuell stayed at a hotel near Kennedy on the night of November 19, 2021. Kennedy picked Samuell up from the hotel the morning of November 20, 2021, and took him to the Kennedy dealership.

13. Samuell was at the Kennedy dealership less than 15 minutes.

14. During that time, Kennedy presented Samuell with the "Motor Vehicle Purchase Contract" that had previously been provided to Sierra's bank, but not Sierra. This was the first time Sierra had ever seen this document. Kennedy did not discuss the Vehicle's warranty with Sierra, and no boxes were checked regarding the Vehicle's dealer warranty.

15. Samuell signed the document, which purports to disclaim all implied warranties, and then jumped in the Vehicle and drove the Vehicle to a job in Kentucky.

16. The Vehicle is defective.

17. On September 13, 2022, the Vehicle was brought into Hunt Ford for a recall. The mechanic reprogramed the "ITRM".

18. On September 15, 2022, Sierra returned the Vehicle to Hunt Ford complaining of the check engine light being on and the transmission not shifting correctly. The Vehicle only had 17,596 miles. The mechanic replaced the SCR Catalyst and the particulate filter. They also reprogrammed the "PCM" and "TCM"

19. On September 27, 2022, the Vehicle was again returned to Hunt Ford for the transmission not shifting correctly. The mechanic found the "…TCM trans accelerated main control break in routine…". Sierra also complained about the check engine light being on and low fuel pressure.

20. On June 26, 2023, the Vehicle was brought into Jess Ford for the battery not keeping a charge. When diagnosed, it found that the battery had a bad cell and was replaced.

21. On July 26, 2023, the Vehicle was again brought to Jess Ford with issues. This time there seemed to be a computer issue. The seat back cover with AIRBAG and driver's side headlight were also replaced and repaired.

22. On August 2, 2023, the Vehicle was again brought to Jess Ford with odd wear on the tires and steering issues. The mechanic diagnosed the Vehicle as having "…joints on the drag link and the vehicles RH tie rod popping in and out of there (sic) joints, causing odd steering feel…replaced the tie rod and drag link and aligned steering wheel until it was correctly placed and test drove, vehicle steering tightened, causal part 3304. Miles out 33339".

23. On August 29, 2023, the Vehicle was again returned to Hunt Ford for issues. The driver's side headlight was out again. Sierra supplied a headlight that was sent from Jess Ford as they did not have a tech that could install the light. The check engine light was again on. This time the filter assembly was replaced.

24. On September 14, 2023, the Vehicle was returned to Hunt Ford for the TCM and PCM to be reprogrammed.

25. Sierra got the Vehicle back on September 19, 2024.

26. On January 6, 2024, the Vehicle was returned to Hunt For further electrical issues.

27. The Vehicle sat at Hunt until March.

28. On March 29, 2024, the Vehicle was towed to Greenwood Ford for major electrical issues. The Vehicle would not start after sitting for a couple days. The Vehicle had already been through three batteries, three DPF filters, and other parts. The Vehicle was diagnosed, and the following repairs were made:

    a. "Replaced BJB and cover, retest, all ok. Also replaced a battery and installed JB service kits"

    b. "Removed front accessory drive, removed A/C compressor removed started, removed right hand side engine mount and fan shroud and stator. Tested both batteries and charged removed lower radiator hose also removed right side fender liner removed air cleaner and battery trays. Rerouted harness and reinstalled all removed components performed EVAC recharge on A/C system and topped off coolant and bled system reinstalled batteries and tested all passed at this time"

29. Around May 22, 2024, the Vehicle was towed to Sierra. The Vehicle would again not start. The Vehicle was towed back to Greenwood and has been there ever since.

SIERRA AERONAUTICS - COMPLAINT

30. The same day, Sierra purchased a replacement vehicle from Ford of Moses Lake in Moses Lake, WA. Sierra paid $86,298.66 for a 2024 Ford Super Duty F-350.

31. In total the Vehicle was in a Ford repair facility for approximately 400 days prior to disclaimer of the Vehicle by Sierra.

32. While the Vehicle was out of commission, and prior to Sierra's purchase of a replacement truck, Sierra needed to rent vehicles to get work done.

## IV.    PRODUCT DEFECT AND NEGLIGENCE

33. Sierra incorporates the foregoing.

34. Sierra made an oral agreement with Kennedy and Ford to purchase the Vehicle.

35. The other Defendants repaired the Vehicle as licensed dealers and agents of Ford.

36. Kennedy and Ford owed Sierra a duty to ensure the Vehicle sold to Sierra was manufactured with reasonable care, and free from defects.

37. Greenwood, Hunt, and Jess owed Sierra a duty to repair the Vehicle with reasonable care.

38. Each Defendant owed the above-named duties to the Sierra, and additional duties, breached those duties, caused harm as a result of those breaches, and damaged Sierra.

## V.    BREACH OF IMPLIED AND EXPRESS WARRANTY

39. Sierra incorporates the foregoing.

40.  Kennedy and Ford sold the Vehicle with implied and express Warranties.

41. Where a disclaimer of implied warranty is not part of the original agreement between the seller and the purchaser, the disclaimer cannot limit the purchaser's claim for implied or express warranty. See *Vandalia Ranch, Inc. v. Farmers Union Oil* (1986), 221 Mont. 253, 256-57, 718 P.2d 647.

42. Sierra notified Kennedy and Ford of the multiple issues in breach of said warranties in a reasonable amount of time.

43. Greenwood, Hunt, and Jess, on behalf of Ford, repaired the Vehicle for warranty breaches, creating new and sustaining implied and express warranties.

44. Sierra notified Greenwood, Hunt, Jess, and Ford of the multiple issues in breach of said warranties in a reasonable amount of time.

45. None of the Defendants were able to fix the Vehicle to bring it into compliance with the Defendants' implied and express warranties, and Sierra was forced to purchase a replacement Vehicle to mitigate ongoing damages.

46. Sierra has sustained damages as a direct result of the Defendants' breaches of the implied and express warranties provided by Defendants.

## VI.    FRAUD

47. Sierra incorporates the foregoing.

48. Defendants made representations regarding the quality of the new Vehicle, and the Vehicle repairs.

49. These representations were false and material.

50. Defendants knew or should have known of the falsity of these representations.

51. Defendants intended that Sierra rely on these representations.

52. Sierra relied on these representations to their detriment.

53. As a result of Sierras reliance on these representations, Sierra was injured and damaged.

## VII.    CIVIL CONSPIRACY

54. Sierra incorporates the foregoing.

55.  The Defendants conspired to conceal the defective nature of the Vehicle from Sierra.

56. The object of the Conspiracy was to hide from Sierra and/or the general public the nature of the defective Vehicle.

57. The Defendants had a meeting of the minds on this object.

58. One or more Defendants committed one or more unlawful overt acts in furtherance of the conspiracy.

59. Sierra was damaged by the conspiracy.

## REQUEST FOR JURY TRIAL

Sierra requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Sierra request that judgment enter against Defendants, jointly and severally, on its behalf:

1.  For Sierra's damages in an amount in excess of $100,000, to be proven at trial;

2.  For the cost of this suit incurred by Sierra;

3.  For Sierra's expert fees;

4.  For Sierra's attorney fees;

5.  For interest as permitted by law to the date of entry of judgment, as well as post-judgment interest until paid;

6.  For all such other relief as the Court deems just and proper.

DATED this <u>30th</u> day of January 2025.


_____
Walter D. Clapp
Honor Coin Law, PLLC
     *For Plaintiff Sierra Aeronautics Ltd.*

SIERRA AERONAUTICS - COMPLAINT